# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY COY COCHRAN,<br><br>    Plaintiff,<br><br>    v.<br><br>S. SHERMAN, et al.,<br><br>    Defendants. | 1:15-cv-01388-BAM (PC)<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO FILE FIRST AMENDED COMPLAINT<br>(ECF No. 12)<br><br>ORDER DIRECTING CLERK OF COURT TO UPDATE DOCKET AND FILE FIRST AMENDED COMPLAINT<br>(ECF No. 13) |

Plaintiff Billy Coy Cochran ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

Currently before the Court is Plaintiff's motion to file a first amended complaint, filed June 24, 2016. (ECF No. 12.) Plaintiff has also lodged a proposed first amended complaint. (ECF No. 13.)

**I.     Procedural Background**

On May 17, 2016, the Court screened Plaintiff's complaint filed September 11, 2015, and found that he stated a cognizable claim for injunctive relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, based on the alleged denial of a "publically recorded religious name change." The Court granted Plaintiff thirty days from the date of service of that screening order to file an amended complaint to attempt to state additional

cognizable claims for the violation of his First Amendment rights, or to file a notice that he was agreeable to proceeding only against Warden Sherman on his RLUIPA claim.

On May 26, 2016, Plaintiff filed a notice of willingness to proceed only on the RLUIPA claim against Warden Sherman. (ECF No. 8) Consequently, on June 1, 2016, the Court dismissed the remaining claims and defendants, and ordered that this action would proceed on Plaintiff's complaint, filed on September 11, 2015, against Defendant Warden Sherman for injunctive relief pursuant to RLUIPA. (ECF No. 9.)

On June 24, 2016, when Plaintiff filed the instant motion to amend his complaint, service of the summons and original complaint on Defendant Sherman was still pending.[1] On September 8, 2016, (ECF No. 14), and September 28, 2016, (ECF No. 15), Plaintiff filed notices of change of address with the Court, reflecting housing changes. According to Plaintiff's most recent notice, he is currently housed at Valley State Prison, in Chowchilla, California. (ECF No. 15.)

**II.     Motion to Amend**

In the instant motion, Plaintiff states that he seeks to amend his complaint as a matter of course under Federal Rule of Civil Procedure 15(a), or by leave of court under Federal Rule of Civil Procedure 21. Plaintiff admits that he filed a notification of willingness to proceed only on his cognizable RLUIPA claim. Plaintiff contends that he did so because at the time he received the Court's May 17, 2016 screening order, he was in segregation and had no access to his legal materials or the law library. He further contends that he requested his legal materials and law library access, which he obtained in June 2016, and shortly thereafter he was able to file this motion to amend his pleading.

**A.     Summary of Original Complaint**

Plaintiff's original complaint named as defendants Warden S. Sherman and Correctional Counselor J. Barba, officials employed by the California Department of Corrections and Rehabilitation ("CDCR") at CSP-Corcoran, where the events at issue occurred.[2]

---

[1] Defendant Sherman has since been served. (ECF No. 17.)
[2] Plaintiff also named other defendants, but the Court later dismissed them and they are not at issue in the instant motion.

Plaintiff alleges that upon his incarceration in 2002, Plaintiff experienced a religious conversion. Plaintiff began practicing eclectic religious beliefs based upon different faith traditions. Plaintiff further alleges that such practices instilled in him the belief that he must change his name from "Billy Coy Cochran" to "Gabriel Christian Hunter." Plaintiff's belief is based on his conviction that his old name was associated with self-centered beliefs and associations, and specifically, with religious immorality.

On January 1, 2015, Plaintiff filed a request for "a publicly recorded religious name change." (Compl., ECF No. 1, p. 6.) Plaintiff alleges that he submitted the request to Warden Sherman. Plaintiff alleges that on January 29, 2015, Warden Sherman, via Correctional Counselor Barba, arbitrarily denied Plaintiff's request.

**B.     Summary of Proposed First Amended Complaint**

Plaintiff's proposed first amended complaint is substantially the same as his original complaint, with a few additional pertinent allegations. Plaintiff more specifically alleges that Warden Sherman authorized Correctional Counselor Barba to reply to Plaintiff's name change request. On January 29, 2015, Counselor Barba denied the name change by stating as follows:

> Your central file was reviewed by CCII Specialist J. Barba, who determined, based on your violent conviction history; it would not be in the prison's best interest to change your name. Further, SATF cannot support your legal name change for reasons pertaining to institutional safety and security. Your request is therefore denied at this time. You may, however, contact the courts as an individual to pursue a name change.

(First Am. Compl., ECF No. 12, p. 6). A copy of the January 29, 2015 response letter containing the above statement is attached as an exhibit to the First Amended Complaint. (Id. at p. 20.) Plaintiff alleges that Counselor Barba's response was authorized by Warden Sherman.

Plaintiff alleges that contrary to the response letter, the accommodation of the right would not impact guards, other prisoners, and prison resources because the recordkeeping provides for an a.k.a., and the courts have determined that using a new name in conjunction with the commitment name is an appropriate accommodation. Plaintiff alleges that based on these facts, Warden Sherman and Counselor Barba violated his right to freedom of religion, and he seems to bring a claim against them under the First Amendment, RLUIPA, and under California tort law.

3

Plaintiff also alleges that Scott Kernan, Secretary of CDCR, violated his freedom of religion by implementing Cal. Code Regs, tit. 15, § 3294.5, which was used to deny his name change request.

**C.     Legal Standard**

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's pleading once as a matter of course within (1) 21 days after serving it, or (2) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend only by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a)(2).

Rule 15(a) is very liberal and the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); see also AmerisourceBergen Corp. v. Dialysis West Inc., 445 F.3d 1132, 1136 (9th Cir. 2006) (same). However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." AmerisourceBergen Corp., 445 F.3d at 1136. Futility alone can justify the denial of leave to amend. Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995); see  also Novak v. United States, 795 F.3d 1012, 1020 (9th Cir. 2015) (declining to grant leave to amend on the grounds that the "amendment would be an exercise in futility because even if Plaintiffs established standing, they would still fail to state a claim").

**D.     Discussion**

Since Plaintiff sought leave to amend his complaint while service was pending, and before any responsive pleading or motion under Rule 12(b), (e), or (f) was filed, leave to amend should be granted unless the Court finds undue delay, bad faith, prejudice, or futility of the amendment. Given the procedural posture of the case, the timing of the proposed amendment, and accepting the representations in Plaintiff's motion for leave to amend, the Court does not find undue delay, bad faith, or prejudice in this case. Thus, the Court will turn to examining whether the proposed amendment here is futile.

///

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Reahab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Shabazz, 482 U.S. 342, 348 (1977)). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion preventing him from engaging in conduct which he sincerely believes is consistent with this faith, but an impingement on an inmate's constitutional right will be upheld "if it is reasonably related to legitimate penological interests." Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

Prison regulations may lawfully curtail inmates' constitutional rights, provided that the regulations are "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. The burden falls on the prison officials to prove that the burden on an inmate's exercise of religion was reasonably related to a legitimate penological objective. Ashelman v. Wawrzaszek, 111 F.3d 674, 677–678 (9th Cir. 1997) (applying test from O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), and Turner). Turner set forth four factors for courts to balance in determining whether a regulation reasonably relates to legitimate penological interests: 1) Whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; 2) whether there are alternative means of exercising the right that remain open to prison inmates; 3) whether accommodation of the right would impact guards and other inmates and the allocation of prison resources in general; and 4) whether or not there are easy, obvious alternatives to the denial of the right. Turner, 482 U.S. at 89-90; Shakur, 514 F.3d at 884; Malik v. Brown, 16 F.3d 330, 334 (9th Cir. 1994).

In California, Plaintiff, as a state prisoner, may not petition the court to legally change his name unless he is first permitted to do so by the Director of Corrections. Cal. Civ. Proc. § 1279.5(b). The process for obtaining permission from the Director of Corrections requires prisoners to first request a legal name change from the warden. Cal. Code Regs., tit. 15, § 3294.5(a). If the request is denied, the warden shall provide the reason(s) for the denial and the process ends. § 3294.5(b). If approval of the request is recommended, the warden shall forward

the request to the Institutions Division Regional Administrator. § 3294.5(c). If the Institutions Division Regional Administrator agrees with the approval recommendation, a letter is sent to the court explaining the reasons for approval of the name change by the Department of Corrections. § 3294.5(e). Final approval is then in the hands of the court. Cal. Civ. Proc. § 1279.5(b); Cal.Code Regs., tit. 15, § 3294.5(g).

### 1. Warden Sherman and Correctional Counselor Barba

Plaintiff has stated a cognizable First Amendment claim in the proposed first amended complaint on the basis of the denial of his name change request against Warden Sherman and Correctional Counselor Barba. Plaintiff has alleged facts indicating sincerely held religious belief requiring him to change his name. He further alleges that he wrote to Warden Sherman to request a religiously motivated name change in compliance with California law.

Plaintiff further alleges that Warden Sherman and Counselor Barba denied his request for reasons pertaining to institutional safety and security, based on Plaintiff's conviction history. However, in applying the Turner factors to the denials of religious name changes on grounds of institutional safety and security, the Ninth Circuit has held that "[u]sing both the religious and the committed name is a satisfactory alternative means for an inmate to freely exercise his religion." See Malik v. Brown, 16 F.3d 330, 334 (9th Cir. 1994). Here, Plaintiff has alleged that the institutional concerns could be addressed by using a new name for him in conjunction with his commitment name, which the denial does not address. At this stage, the Court cannot find that Defendants' reasoning for Plaintiff's name change denial is reasonably related to legitimate penological interests under the Turner factors.

Plaintiff has not stated a claim in his proposed first amended complaint against Warden Sherman and Counselor Barbar under RLUIPA. RLUIPA only authorizes official capacity suits against government employees for prospective, injunctive relief. Sossamon v. Texas, 563 U.S. 277, 287-88 (2011); Wood v. Yordy, 753 F.3d 899, 902–04 (9th Cir. 2014). Where an inmate has been transferred from the institution where his claims arose, he may only bring suit under RLUIPA if he has a reasonable likelihood of being transferred back. See City of Los Angeles v. Lyons, 461 U.S. 95, 102–05 (1983); Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson

v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); Andrews v. Cervantes, 493 F.3d 1047, 1053 n. 5 (9th Cir. 2007). Here, Plaintiff has been transferred from CSP-Corcoran, where his claims arose and where Warden Sherman and Counselor Barba are employed, to two different institutions. Plaintiff currently remains housed at Valley State Prison, since September 2016. Plaintiff has also not pleaded any facts showing a reasonable likelihood of his being returned to CSP-Corcoran. Accordingly, he has not pleaded a basis for prospective relief under RLUIPA.

Plaintiff's proposed first amended complaint also does not allege any claim under California tort law against Warden Sherman or Counselor Barba. Plaintiff alleges that these prison officials violated California tort law by negligently denying him a legal name change. "Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal. App. 4th 983, 994 (2008)). Plaintiff has not pleaded facts showing any duty was owed to him regarding his name change, that such duty was breached, or that his caused him any injury or damages cognizable in state tort law. Plaintiff's allegations that Warden Sherman and Counselor Barba acted negligently are conclusory and insufficient to support his claim.

In summary, Plaintiff has stated a claim in his proposed first amended complaint against Warden Sherman and Counselor Barba for the violation of his First Amendment rights on the basis of the denial of his application to change his name for religious purposes, but no other claims against those defendants.

### 2. Secretary Scott Kernan

The Court next turns to whether Plaintiff has stated a claim in his proposed first amended complaint against CDCR Secretary Scott Kernan. Plaintiff alleges that Secretary Kernan violated his right to freedom of religion by implementing Cal. Code Regs., tit. 15, § 3294.5(a), which was used by Warden Sherman and Counselor Barba to deny Plaintiff a publically recorded name change. As noted above, section 3294.5 sets forth the procedure for prisoners to request a legal

name change, and requires prisoners to obtain permission for that name change by first requesting a legal name change from the warden. Cal. Code Regs., tit. 15, § 3294.5(a). Plaintiff asserts that this regulation impermissibly reverses the burden of proof.

As noted above, the Free Exercise Clause "requires government respect for, and noninterference with, [ ] religious beliefs and practices. . . ." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). To state a claim under the Free Exercise Clause, an inmate must plausibly allege that a prison official's actions substantially burdened the inmate's exercise of a sincerely-held religious belief, and did so in an unreasonable manner—i.e., that the official's actions were not "rationally related to legitimate penological interests." See O'Lone, 482 U.S. at 348-50. "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." Jones v. Williams, 791 F.3d 1023, 1031-33 (9th Cir. 2015) (a "substantial burden" must be "more than an inconvenience on religious exercise") (citations omitted).

Here, Plaintiff does not plausibly allege that the regulation he challenges placed a substantial burden on the exercise of a sincerely-held religious practice. The regulation he challenges provides a procedure for Plaintiff to request a legal name change, which is initiated by making the request to the warden. Plaintiff does not allege that his religion did not permit him to comply with this regulation, or that complying with this process forced him to forego any sincerely held religious beliefs, or that the regulation required him to engage in conduct that violated those beliefs. The fact that Plaintiff disagrees with the decision made under the procedure set forth in the regulation does not show that the enactment of the regulation itself violated his religious rights. Accordingly, Plaintiff has not stated any claim against Secretary Kernan in the proposed first amended complaint based on the implementation of the regulation concerning inmate name changes, Cal. Code Regs., tit. 15, § 3294.5.

### E. Leave to Amend

Based on the foregoing analysis, the Court does not find that granting leave to amend here would be "an exercise in futility." Novak, 795 F.3d at 1020. Rather, Plaintiff's proposed

amendment would cure some of the defects the Court found in screening Plaintiff's original complaint, and would state a cognizable claim for the violation of his First Amendment rights against Warden Sherman and Counselor Barba based on the denial of his name change. As a result, under the liberal standards of Rule 15, the Court finds that Plaintiff should be granted leave to amend. The Court will direct that the proposed first amended complaint lodged by Plaintiff be filed on the docket by the Clerk of the Court.

Counsel for Warden Sherman has already appeared in this matter, and thus service of the first amended complaint will be made electronically through counsel when the first amended complaint is filed on the docket. However, Counselor Barba is not currently a party to this action, having previously been terminated. (See ECF No. 9, p. 2.) Consequently, a separate order shall issue regarding service of Plaintiff's first amended complaint upon Counselor Barba once that pleading is filed.

### III. Conclusion and Order

For the reasons discussed above, it is HEREBY ORDERED as follows:

1. Plaintiff's motion to file a first amended complaint, filed June 24, 2016 (ECF No. 12), is GRANTED;

2. The Clerk of the Court is DIRECTED to file Plaintiff's first amended complaint, lodged on June 24, 2016 (ECF No. 13), on the docket;

3. This matter shall proceed on Plaintiff's first amended complaint against Defendants S. Sherman and J. Barba for the violation of his First Amendment rights based upon the denial of his name change for religious purposes;

4. The Clerk of the Court is directed to update the docket to reflect the change in the parties; and

///
///
///
///
///

5. A separate order will issue regarding service of Plaintiff's filed first amended complaint upon Counselor Barba.

IT IS SO ORDERED.

Dated: **March 15, 2017**        /s/ *Barbara A. McAuliffe*
                                 UNITED STATES MAGISTRATE JUDGE